```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
UNITED STATES OF AMERICA,                     :
                                              :
              v.                              :    MEMORANDUM & ORDER
                                              :    17-CR-594 (WFK)
ALLAN BARTON,                                 :
                                              :
                         Defendant.           :
-------------------------------------------------------------X
```
**WILLIAM F. KUNTZ, II, United States District Judge:**

On April 29, 2019, Allan Barton ("Defendant") was found guilty by jury of being a felon in possession of a firearm and ammunition. Specifically, on August 26, 2016, Defendant, having previously been convicted in a court of one or more crimes punishable by a term of imprisonment exceeding one year, possessed in and affecting commerce, a Hi-Point, Luger 9 mm pistol and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The Court now sentences him and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is sentenced to 51 months of incarceration, 2 years of supervised release, forfeiture of the guns and ammunition recovered in this case, and the $100.00 mandatory special assessment. Additionally, the Court adopts the Probation Department's proposed special condition.

## BACKGROUND

On April 29, 2019, Allan Barton ("Defendant") was found guilty by jury of being a felon in possession of a firearm and ammunition. Specifically, on August 26, 2016, Defendant, having previously been convicted in a court of one or more crimes punishable by a term of imprisonment exceeding one year, possessed in and affecting commerce, a Hi-Point, Luger 9 mm pistol and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

### I.    Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines

sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form[.]" *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

## II. Analysis

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

#### a.   Family and Personal Background

Defendant was born on October 29, 1971, in Uniondale, New York. PSR ¶ 27–28. His parents—Allan Barton and Kathleen Schep—were never married. *Id.* Defendant has a close relationship with his mother who is in good health, resides in Texas, and remains supportive of Defendant despite the instant offense. *Id.* However, his parents ended their relationship when Defendant was an infant, and he has not been in contact

2

with his father since then. *Id*. Defendant shared a close relationship with his stepfather until his stepfather passed away in 2014. *Id*. Defendant has three maternal half-siblings. His siblings are all aware of the instant offense and remain supportive. *Id*. ¶ 29. Defendant was raised in modest economic circumstances and reported a "normal" childhood, free from any history of abuse or financial hardship. *Id*. ¶ 28.

Defendant attended Uniondale High School in Uniondale, New York, but dropped out in the 12th grade after being arrested for a prior unspecified offense. *Id*. ¶ 42. He received his GED on January 7, 1992 while incarcerated for a prior conviction. *Id*. Additionally, he received his plumbing certificate from the New York State Department of Labor in approximately 1997. *Id*. ¶ 44. Defendant attended one semester of college at the New York Institute of Technology in 2012. *Id*. ¶ 43.

Defendant moved to Brooklyn in 2006. *Id*. ¶ 30. Before his arrest for the instant offense, Defendant lived with and was the primary caretaker of his great-aunt, Arletta Newton who is in the early stages of dementia. *Id*.

In approximately 2000, defendant had a brief romantic relationship with Tyhisha Dukes. *Id*. ¶ 31. Ms. Dukes, a nurse, is aware of the instant offense and is supportive of Defendant. Defendant and Ms. Dukes share one child—Allan Barton— who resides with his mother in Queens and is currently enrolled in a General Educational Development (GED) Program. *Id*. Prior to his incarceration, Defendant was active in his son's life and financially provided for him when necessary. *Id*. Defendant shares a good relationship with his son, who is aware of the instant offense and is supportive of Defendant. *Id*.

Defendant also has a child with Lameeka Malchi, a Parks Department worker. *Id*. ¶ 32. Alleek Malchi, age 16, resides with his mother and stepfather and is attending

3

school. *Id*. Ms. Malchi and Defendant do not speak. *Id*. Defendant stated in his presentence interview that prior to his incarceration, he would financially provide for his son when necessary, and spent birthdays and holidays with him. *Id*. Defendant stated that there is currently a child support case in process with Brooklyn Family Court, but that Defendant's son is aware of the instant offense and is supportive of him. *Id*.

    b.    <u>Defendant's Physical Condition</u>

Despite being shot in 1992 and stabbed in 2003, Defendant is current healthy. *Id*. ¶ 37–39. Defendant smoked marijuana approximately four times a week and drinks alcohol occasionally. *Id*. ¶ 41.

    c.    <u>Defendant's Criminal History</u>

Defendant was arrested for committing Robbery in the Second Degree in violation of New York Law on September 3, 1989. *Id*. ¶ 17. Defendant pleaded guilty to the robbery offense on July 16, 1991 and was sentenced to three to nine years imprisonment. *Id*. The defendant was initially paroled on September 4, 1992 but defendant's parole was revoked on November 26, 1993 based on the defendant's arrest for another crime. *Id*. Defendant was then remanded into custody on that date, where he remained until February 4, 2000, at which point the defendant was "re-paroled." *Id*.

This second crime was criminal possession of a loaded firearm in the third degree, a violation of New York Penal Law § 265.02; the defendant pleaded guilty to this offense in November 1993 and received a sentence of thirty months to five years in custody. *Id*. ¶ 18. The defendant was arrested again in 2007 and ultimately pleaded guilty in July 2009 to two misdemeanor offenses in New York State Supreme Court for Kings County: menacing in the second degree (with a weapon), in violation of New York Penal Law § 120.14, and assault in the

third degree (with intent to cause physical injury), in violation of New York Penal Law § 120.00. *Id.* ¶ 19. The defendant received a sentence of one year in custody on each count, to run concurrently with each other, for a total sentence of one year, which, the PSR indicates, the defendant began serving in July 2009. *Id.*

According to the PSR, these convictions in July 2009 also had the effect of resulting in a second revocation of parole with respect to the defendant's 1991 robbery conviction, resulting in an additional eight months of custody attributable to that offense (the PSR indicates that the defendant was "re-paroled" in March 2010). *Id.* ¶¶ 17–19. The addendum to the PSR clarifies that, following the defendant's release from custody in February 2000, he had a maximum parole expiration date of August 2003. However, the defendant subsequently absconded from parole in December 2000. A warrant was issued for the defendant's arrest, but he was not located until his arrest in 2007. *See* ECF No. 80.

    d.  <u>Legal History, Nature of Offense</u>

On August 26, 2016, officers with the New York City Police Department (NYPD) were on duty in a marked vehicle in Brooklyn, New York, when they were flagged down by three men. The men told officers that they had been threatened by the defendant, who was in possession of a firearm and sitting inside a white van. The officers identified the van and approached the vehicle, at which time the defendant sped off through an intersection and ran a stop sign. The defendant tossed the loaded firearm out of the driver's side window on a residential block while fleeing from the officers. The firearm landed on a front lawn where two young children were playing, who then alerted the neighbors. NYPD officers safely recovered the firearm after being contacted. An investigation subsequently revealed that the defendant's DNA was found on the firearm.

5

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2). The instant sentence adequately punishes Defendant for his crime and provides both general and specific deterrence.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3). The maximum term of imprisonment is ten years. 18 U.S.C. §§ 922(g), 924(a)(2). Additionally, The Court may impose a term of supervised release of not more than three years. 18 U.S.C. § 3583(b)(2). Because Count 1 is a Class C Felony, Defendant is eligible for not less than one nor more than five years of probation. 18 U.S.C. § 3561(c)(1). One of the following must be imposed as a condition of probation unless extraordinary circumstances exist: a fine, restitution, or community service. 18 U.S.C. § 3563(a)(2). The maximum fine is $250,000.00, 18 U.S.C. § 3571(b). Additionally, there is a mandatory special assessment of $100.00, per count. 18 U.S.C. § 3013. Defendant may also be required to pay the costs of prosecution. United States Sentencing Commission, Guidelines Manual ("USSG") § 5E1.5.

### D. The Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the

6

applicable category of defendant as set forth in the guidelines[.]" 18 U.S.C. § 3553(a)(4)(A).

The Guideline for this 18 U.S.C. § 922(g)(1) offense is USSG § 2K2.1(a)(4)(A), which provides a base offense level of 20 if Defendant committed the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense. Specifically, in this case, Defendant sustained a conviction for Robbery in the 2nd Degree, which is a crime of violence, as defined in USSG §4B1.2(b). As such, the base offense level is 20. Because the Defendant's Criminal History Category is IV, the Guidelines Sentencing range is 51 to 63 months of imprisonment.

While defense counsel does not directly challenge this guidelines calculation, he suggests the Probation Department has incorrectly calculated Defendant's criminal history category. In relevant part, defense counsel notes:

> According to the PSR, Mr. Barton was released from prison in 2000. (PSR ¶ 18). The PSR states that he was "re-paroled" on the 1991 conviction and "paroled" on the 1993 conviction. (PSR ¶¶ 17-18). Unfortunately, however, the PSR does not say what Mr. Barton's parole expiration date was at that point in time. That date matters . . . if Mr. Barton's subsequent misdemeanor conviction in 2009 occurred before his parole expiration date on the previous convictions, that timing drives a massive Guidelines increase to both his offense level (6 points, from 14 to 20) and criminal history category (from category II to category IV).

ECF No. 79 at 2–3. Defense counsel notes that a conservative estimate of Defendant's maximum potential parole expiration date as of 2000 would show that he had "at most 3 remaining years to serve on parole . . . making his potential expiration some point in 2003." *Id.*

If Defendant is correct, then his 1991 robbery conviction should neither enhance his base offense level, nor count towards his criminal history score. Similarly, the defendant's 1993 conviction for criminal possession of a weapon should also be too old to count towards the defendant's criminal history score. As a result, the defendant's base offense level would be 14 (U.S.S.G. § 2K2.1(a)(6)), and the defendant would fall into Criminal History Category II. The

applicable advisory Guidelines range of imprisonment in this scenario would be 18 to 24 months, which is three years less than the Guidelines range calculated in the PSR. *Id.* at 3, 6.

However, the Government and the Probation Department maintain that the criminal history calculation is correct:

> The addendum clarifies that, following the defendant's release from custody in February 2000, he had a maximum parole expiration date of August 2003 (basically in line with the defendant's prediction). However, the defendant subsequently absconded from parole in December 2000. A warrant was issued for the defendant's arrest, but he was not located until his arrest in 2007. Under these circumstances, the Addendum indicates that the defendant's parole was effectively tolled during the time that he was on absconder status and that he was remanded into custody in April 2008 following a parole revocation hearing. As this brings a portion of the defendant's imprisonment within the fifteen-year period of section 4A1.1(a). The Guidelines calculation in the PSR is therefore correct, and the applicable range of imprisonment is 51-63 months.

ECF Nos. 79, 80. The Court concurs with the Government and the Probation Department and explicitly adopts their interpretation of the Sentencing Guidelines range.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor, requiring the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5), is not pertinent to Defendant's sentencing.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Lastly, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7), is not applicable in Defendant's case.

## CONCLUSION

We live in a time made more dangerous by the gun violence perpetrated by previously convicted felons. This court will not condone the conduct of this previously convicted felon who—exactly five years ago today—menaced citizens with his gun, who ran from police with his gun, who drove through a stop sign above speed limits with his gun, and who threw his gun from his moving vehicle where his gun was retrieved by children. His behavior demonstrated a reckless disregard for public safety and the rule of law. To this day he has failed to acknowledge his guilt and express remorse for his actions. His choice made five years ago today leads this Court to impose a guidelines sentence of 51 months of incarceration to be followed by two years of supervised release, forfeiture of the gun and ammunition, and payment of the special assessment in the amount of $100.00 which I am required to impose per count in all cases.

This sentence is appropriate and comports with the dictates of § 3553. This sentence is consistent with and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2). The Court expressly adopts the factual findings of the Presentence Investigation Report, barring any errors contained therein. Additionally, the Court adopts the Probation Department's proposed special condition.

SO ORDERED.

s/WFK

_____

Dated: August 26, 2021
Brooklyn, New York

HON. WILLIAM F. KUNTZ, II
U.S. DISTRICT JUDGE